This is the case of U.S. v. Richardson. Have you reserved rebuttal? I wish to reserve five minutes for rebuttal. That's a lot of rebuttal time. We're going to hold you to your principal time of ten minutes. Okay, thank you, Your Honor. I would like to turn first to the insufficiency argument and address the lack of proof in the government's case in chief on the element of Ms. Richardson's knowledge that the home purchase was designed to conceal any attribute of the funds. Whether Ms. Richardson's affidavit was admitted into the case in chief or not, the reserved Rule 29 motion... Are you conceding a recurrent issue, or are you just not going to address it? Stand on your brief. I'm conceding that the affidavit... I'm sorry, the procedure that was used with respect to the Rule 29 motion and the timing of it. I'm not conceding it, Your Honor, but... It's a little unusual, but in the end, I think I understand what happened. It's very unusual, and I'd be happy to address that issue. I didn't mean to interrupt you. I think my position is that the affidavit goes to Ms. Richardson's knowledge that the funds used were drug proceeds, and my opinion... What you were going to talk about is what really interests me, so please. Yes, thank you, Your Honor. The argument is that there's no proof that she knows that there's intent to conceal. Well, we're not going to be able to get into people's heads. That's always the problem with the proof of intent or the knowledge that it was designed. Well, was it designed, and did she know it was designed? The Tenth Circuit has said we need to be very careful, and in a situation like this, make sure that there is substantial evidence to show this, but we've not adopted such a test. We've not adopted any test. You're looking curious. Well, actually, Your Honor, in United States v. Daz and United States v. Separatis, which were the old United States v. Smith sentencing cases, what the court said then was, what you need in cases of money laundering are concerted efforts to conceal. And while it's true that we can't get into people's heads, there is circumstantial evidence here. There are undisputed facts here, and the undisputed facts completely negate any inference of intent to conceal. Well, that series of transactions, though, on July 29th is as unusual, I would say, as the procedural event regarding the July 29 motion to trial, which you characterized a bit ago. Well, let's talk about this series of deposits, because first, I think that the government did a fairly good job in its brief of making them seem complex and unusual, and I'm not sure that... I don't think they're complex, but there's a quick series of transactions that goes on at actually, what, four different branches of three banks? Is that what it is? Well, under $10,000 each. Yeah, all structured. But there's only evidence that Asia Richardson is involved in one of them, and that's... Oh, wait a minute. There's evidence that she signed one of the deposit slips, not that she wasn't present to the extent that that could constitute involvement. There's evidence that she signed one of the deposit slips into an account that's in both their names, and so there's no use of false names, and what's happening here is... Well, there was one of the accounts was his son's account, right? It's in his son's name, but his son has... Is there any evidence that she was in the banks for these other transactions? Not in the government's case in chief, and Agent Armstrong testifies that she's not involved with or has any access to the other accounts. So what happens in both the court's opinion and the government's brief is that they try to take that deposit and say that the inference is there's a deposit slip with her name on it, and so the inference is she made that deposit. But isn't it pretty clear they're running around to these banks and she's there running around to the banks? It's not clear in the government's case in chief that they are doing anything. The only thing that's in the government's case in chief on this issue is government Exhibit 750D, which is an 802A of our appendix, and then Agent Armstrong's testimony about these deposits, which you can find at 496-498A of our appendix, and when you look at these deposits, what you see is there's a deposit leading to their joint account, which is, you know, an account in their true names, and, you know, this court has said that a deposit made into your own account for the purpose of personal purchasing is not by itself money laundering. If that's all there was. If that's all there was. And that's the first transaction that takes place on this day, right? That's the first transaction. That's the first deposit in the joint account at PNC. Right. So that's the first transaction that takes place, and then there's no evidence connecting her to the other deposits that take place that day in the government's case in chief. None at all. And, in fact, Agent Armstrong's testimony negates an inference that she's involved in the other transactions. He testifies she's not involved in those other accounts. Accounts, but not in the transactions. I don't think he addresses exactly what occurred. Nobody does in the government's case in chief. What he testifies is there's the deposit into the joint account at 12 o'clock in the afternoon on West Haven Road, and then there are deposits at the Citizens Bank account in Philadelphia an hour later, and those are also deposits into Coles's personal account. Actually, there's a deposit into Coles's business account. The takedown records account. Yes, and there's a deposit into the takedown records account. There's a deposit into the personal account. And then with those funds and other funds from his personal account, not using false names, he gets a bank check for $49,000. That's all you know from the government's case on the morning issue. On the afternoon issue, there's another deposit into the joint account, and there's a deposit into his son's account. And all of the amounts, that which the jury could reasonably infer she was present for, and those that the government is suggesting they could properly infer she was present for, all of them involve amounts that are just shy of $10,000. Is it sufficient if the jury infers that she's there? I still don't think it's sufficient if the jury infers that she's there, because I still don't think, you know, there's case law that says, and I think it's the Garcia-Emanuel case that says, suspicious transactions alone don't provide substantial evidence of design to conceal. Don't, I mean, because we, in this circuit, we have been very careful about creating and keeping a distinction between spending money laundering and concealment money laundering. So, this is very much like the Guarchado-Peralta case. But the laundering continues through the actual purchase of the real property, doesn't it? Well, I... And as part of the evidentiary, the entire evidentiary background here upon which the government relies, made the jury look to the fact that Ms. Richardson misrepresented her income as a means of obtaining the mortgage for that piece of real estate. I think this argument goes back to Coyote. If you accept... Now, that's not answering my question. I'm saying, is that a piece of evidence that might be considered in this whole scheme of sufficiency? Because I agree with you that in and of themselves, each of those transactions would not be enough. I'll go so far as to state my view that even if we had stronger evidence that she was present for all four of those, it might not be enough. But what I'm asking is, is that all the government has offered here for sufficiency purposes? Or may we also take into account her deception that she engaged in as a means of obtaining this mortgage to purchase the property? I believe that what the statements on the mortgage applications go to are affecting the transaction. In other words, it's concealing to transact, not transacting to conceal. And that's why I raised Coyote. Can the jury consider that fact? The jury can consider that fact... But this is her knowledge. In terms of her knowledge that this transaction is designed to conceal, I think the jury can consider that fact, but I don't think that that fact creates that inference because of the circumstances surrounding it. If you had a different set of circumstances here... In fact, let's look at the way Culls and Latney operate. If you look at Ms. Latney's testimony, she opens bank accounts in her own name. He gives her cash to put into the bank accounts that are in her name only. And then she buys houses in her name only. That's not what happens here. Here, they sign a sales agreement in both their names, intending to fund it from bank accounts in his name and her name. They provide a deposit check in his name. And at settlement, he shows up with a personal check, which they wouldn't take. But had they taken the personal check, there would be very little way of arguing that there was a design to conceal. Well, if his credit hadn't been poor, there would be very little way of arguing that there was a design to conceal. The events that change this transaction from a transaction where they are buying this house in both their names to live in, in both their names, using a mortgage application, which, by the way, of course, on the first instance of that mortgage application, she provides accurate information. Both the mortgage witnesses testify that there's a customer data sheet that she fills out on the day that they sign the sales agreement together, where she says, I walk in, Bank of America is a customer service representative. I make $22,000. How does that other mortgage application get created? I think the jury figured that out. So here's what happens. They go to buy this house together. They go to pay for the house from accounts in their own names. They apply for the mortgage together, giving accurate information. They can't do it that way. His credit will not support that mortgage application. It's the mortgage company that says, we need to put this in Asia's name only. It's not their idea. It's not their plan. And you can see from the wiretapped telephone conversations that they have. Counselor, do you want to waive some of your rebuttal time? I would have two minutes. All right. Thank you, Your Honor. You can tell from the wiretapped conversations that they have that they always intended to title this house in both their names and that even after the sale, they intended to put the house back in both their names. And there are also wiretapped conversations where they discuss paying for the house from legitimate proceeds from the parties. So I would say that the transaction that's described in 750D, this isn't explained really until the defense case. It's at the defense case that you learn what happens at the closing and why there are New Jersey transactions and not just Philadelphia transactions. But in the government's case in chief, there's no evidence tying Ms. Richardson to any of these transactions. You can't say from the one deposit that she knows about what's happening in the other accounts, just like you can't say that because the other girlfriends know about his drug business and are involved in it. She's in it. All right. Thank you, Your Honor. Yes, go ahead, ma'am, or both. Good morning, Your Honors. May it please the Court, my name is Bernadette McKeown and I represent the United States in this matter. On the concealment aspect, I think there's one major problem with counsel's argument and that is that she is drawing inferences that different interpretations of the evidence and she's drawing inferences that support her view that Ms. Richardson is innocent when there are opposite inferences that can be drawn that support the jury's finding of guilt and this Court must credit those inferences that favor guilt. But what facts support the design and purpose to conceal? Because let's assume he shows up at the settlement with his $40,000 check and they say, fine, thank you very much, let's proceed to closing. We wouldn't have this other, you know, this little structuring wrinkle that makes our antenna go up. And so, you know, if it was designed to conceal and his check was just fine and they were buying the house because they wanted to buy the house and she, you know, was, you know, that was the purpose and then they lived in the house, what fact gives rise to the design to conceal? Well, first of all, Your Honor, there's no evidence other than Ms. Richardson's testimony that they showed up at the settlement with personal checks and there's no evidence at all that there were personal checks. Bank checks were presented at the closing. Those are the checks we had. No one else was there. And Your Honor, quite frankly, we're not supposed to consider her testimony in evaluating the sufficiency of the government's evidence. But I would point out that what she did was offer an explanation as to why she said, yes, I was with him when we went and did all these transactions, but we did it because he came there with personal checks and then we had to run around to these different banks and get bank checks. So you can't rely on that evidence in evaluating the sufficiency of the government's evidence. All right, so then as you point out, we must consider the condition of the record as of the time of the Rule 29 motion. Let's pretend you're in the district court and you're arguing against her Rule 29 motion right now. What is the litany of evidence upon which the government relies to support that bond? Yes, Your Honor. First of all, number one, there's her knowledge. There's her knowledge that he's a big-time drug dealer. In her own words, from the affidavit, but there's other evidence that also support it would allow a juror to conclude that she knew about his drug-dealing activities. There's compensation. What does that have to do with the knowledge and then the design? What proves a design to conceal? He's a big-time drug dealer. What proves that there was a design to conceal on either his part or her part? Well, on his part, I think it's crystal clear. Here he is, not only on the day of closing, but prior to that time when the other bank papers were made, structuring transactions, making cash deposits into multiple bank accounts, putting most of them through his teeth. He's buying a house in which he's going to live. But a transaction can have more than one purpose. There can be a purpose. Remember, it's only in court. I know, I know. An inquiry in the Supreme Court said purpose and structure are often related, but they are not the same. So what is there that supports the inference that this was designed to conceal, not to spend or to, you know, to hide the fact that they are drug proceeds, but to... Well, I think the transactions that occurred here, the bank transactions, were designed to show an intent to conceal. That's very strong evidence. But they decided to buy the house before any of this happened. They decide to buy the house, and they're buying the house, and they're trying to get a mortgage, and finally get a mortgage, and it turns out that they need to go to these banks. The purpose of the $9,600 deposits didn't show design to conceal in the house. It shows that they wanted to make sure nobody found out they were drug proceeds. There's absolutely no reason on earth, as Agent Armstrong testified, why anybody would take the sum of money, which he obviously had on the day of the closing, all the $74,000, one round, to three different banks, use four different accounts, transfer money between those accounts to generate this money to take to the closing. And how much of that did she know about? I will concede that, in the government's case-in-chief, we did not introduce any proof that she was with him. But isn't the Rule 29 motion based on the government's case-in-chief? Yes, Your Honor. So showing me a reasonable inference that a jury could draw based on the activity that day, the timing of the events, was that she was with him. But don't we have to review the Rule 29 motion as of the time that the government rested its case-in-chief? Absolutely, Your Honor. I'm not quibbling with that. I'm saying an inference that the jury could draw, and forgetting about the jury's explanation. But if the jury can just draw inferences, that doesn't keep us from saying at the close of a government's case there was insufficient evidence of intent to conceal. Well, that's what we're talking about, whether there was insufficient evidence, and I'm suggesting... Well, and that sufficiency determination made by the district court pursuant to the motion is going to be made based on what inferences may be reasonably drawn by the final fact based on the record of that court. And the district court judge did that. He denied the Rule 29 motion at that time, and then after the trial wrote an incredibly thorough opinion where he analyzed all the evidence in the case and reached the conclusion that the government's evidence was sufficient at the time the government closed its case-in-chief. When did he deny the Rule 29 motion? Because I know we don't like shaking of heads on the counsel table, but... Before arguing on the Rule 29 motion, I should say that I do not recall specifically whether he may have delayed ruling until after the case. But he wasn't considering... He was very careful not to consider the defense case in evaluating the evidence, and I'm suggesting here that between her knowledge, these transactions, the fact that when they couldn't buy the house together as a couple, she was ready, willing, and able to lie about her income, and she also... Yes, she wanted the house. She wanted the house, but they also... She was afraid of male fraud. Of wire fraud, Your Honor. And I would say that we can't... We can't rely on that evidence. But that count was based on that. Well, there's other aspects. Wire fraud has different elements. An inconsistent verdict would not allow this court to disturb the justice basis. Why wasn't she charged with too little eye, avoiding the transaction reporting requirement as compared to concealing or disguising? We did charge her with structuring, Your Honor, because I don't think there was any evidence that she knew that... I don't know. I shouldn't say, but she was not charged with structuring. Coles was, and he was convicted of structuring. So we're not suggesting that that part of it with regard to her was significant. But because we're putting the house in her name, knowing he's the de facto owner, lying about her income, that shows an intent to conceal the source of the funds. Coles is the source of the funds. Remember, it's the lender here, not the broker. Forget the mortgage company, which may well be in cahoots with all this. But we're talking about the lender. Chase Manhattan has no idea that Alton Coles is involved with this house. They think that this is legitimate money, that she's earning $114,000 a year. That's why this deal goes through. And there's the pattern of the very unusual bank activity. And then on top of that, we have the structure of the mortgage deal itself. It is immaterial that they may have intended to do it another way. That just means they wouldn't have been as good at the money laundering as they ended up being. Because even if it were the house retitled in Coles' name, that doesn't mean that there wouldn't be sufficient evidence given his involvement in clearly trying to conceal the nature of these proceeds. There's just no other explanation for this bank activity. Do you have enough if you don't have the bank activity? That is, if they show up and he writes a personal check and she has said she's earning $114,000 and they put it in her name, do you have enough without the structuring, without running around to the banks? Without the structuring, if he... I think that the activity in the bank accounts is very significant. Whether or not... Although in the government's case, all you have is her signature on a deposit slip. We have her signature on a deposit slip which is very, very strong evidence that she made that cash deposit. She knows that there was another deposit made into that account that same day because the check presented at the closing from PNC Bank was for $19,000. She deposited $9,200. The evidence was very clear that that account, basically, there was no other money in that account. That was a joint account. That was a joint account. That's why she knows. That's why she knows not only through bank statements but also there's conversations on June 6th. But that cleared out the account, correct? No? Yes, it did. If it cleared out the account, it's not necessarily structuring. I mean, if it's $9,200 and that's all there was in the account. When she put $9,200... Oh, I'm sorry. Yeah, yeah, yeah. She put $9,200 and then she knows that more money was put in and it was completely reasonable. But she doesn't know if it was cash or a check or what. She just knows that... She knows that there's another deposit made into that account. And I think it's reasonable for the jury to infer, given her knowledge of his drug activities, the fact that she's involved in one transaction that is somewhat odd and then she knows that multiple checks were presented that day. They could have inferred, number one, that she was with him when that other bank activity occurred and, number two, that she knew that Coles intended to do this in order to conceal the nature of the funds. Remember, she has to just have knowledge that that was a purpose or an intent. Coles clearly had that intent and she knew that and she went along with this plan. She wanted that house, yes, but she was willing to use drug money to get that house. No, no, no. I mean, she can use drug money to get the house without concealing, right? They're clearly not transparent, but yes, but this was not... You buy diamonds with drug money. Right. There can be transparent transactions, but here there was an effort to conceal both Coles' involvement, Coles' role as the purchaser, and maybe they would have done it differently, but that's not the case we have before us and we are required to evaluate the conduct that occurred rather than a conduct that didn't occur. But how about the Tenth Circuit where they say where the person is deriving a personal benefit and it is for a personal purpose, such as we're buying a house and we're going to live in it. The evidence as to the design to conceal must be substantial. I know that the Tenth Circuit has held that and I understand that this court hasn't reached that conclusion, but I would suggest that the real question is, is the evidence here substantial enough to sustain that jury's verdict? And our response would be, it is when you look at all the different components together. Do you want to speak about the other issues? Unless Your Honors have any questions about the other issues, we will rest on our brace. I'm happy to answer any questions you may have. I think there's evidence here that Coles may be structuring, but the reason that Ms. Richardson is not charged with structuring is there's no evidence that she knows anything about a reporting requirement, which is a very important element of a structural case. A lot hangs in the government's argument and in the court's opinion below on the Warren Bank deposit. Well, not really. I mean, the house ends up in his name. She falsifies her income. In her name. I mean, in her name. She falsifies her income so that she's really the one with the mortgage application. Then you have her knowledge. And how much more do we need? I mean, the fact that it ends up in her name is unfortunately not good evidence for your side. And the fact that she falsifies the mortgage application. Well, let me address the fact that it ends up in her name first. If they start out by putting the house in her name, I mean, that's a very bad case for me, but where they start out open and notorious, buying the house together, and they end up putting the house in her name not to conceal, not because they suddenly decided we have to conceal his participation in this event, but because they have to overcome the obstacle of his credit. That's the purpose of that concealment, to affect the transaction. And it's not their idea. It's the mortgage company's idea. Paul McGovern says, I sent this to Wayne Moses to tell him to get Asia Richardson a mortgage. It's not that Asia Richardson and all the Coles came back to him and said, well, if this is a problem with Coles' mortgage, Coles' credit, then let's just put it in Ms. Richardson's name. That, I mean, you can't, I don't see how the court can infer that there's an intent to design from a set of circumstances which they don't put in motion. And the telephone calls, the wiretap telephone calls about these events demonstrate that they don't really understand it. Eight Coles and Richardson are talking on the phone, and, you know, he says to her, make sure that mortgage company understands you don't have the income. Make sure this isn't going to go, make sure this is going to go through, because you don't have the income. And she says on the wiretap, what more credible evidence could there be? They're being surveilled. She says, I told her, I don't have the income. Now, the jury acquitted her on these counts, and I understand that we have to look at the evidence. Speak into the microphone, Sue. I understand that we have to look at the evidence most favorably to the government, but that standard is also about supporting the verdict. And if you look at the evidence, if you look at that verdict, they are actually accepting that she did not lie. That had to be a necessary part of their finding, that she didn't lie. But even if you find that she lied, and even if, I mean, obviously, they put the house in her name, that was to affect the transaction. It's not to conceal his participation. I believe that your time is up. Oh, okay. Thank you. Thank you, counsel. The case was very well argued. We'll take the matter under advisement and ask that prior to recess, please. Please rise. This court stands as hearing until September 12, 2011. Wow. Thank you.